FILED
2008 Nov-19  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | | |
|---|---|---|
| **JENNIFER D. ALLEY and REAL TIME MEDICAL DATA, LLC** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-07-BE-0096-E** |
| | ] | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |
| | ] | |
| | ] | |
| | ] | |

## MEMORANDUM OPINION

This matter is before the court on "Motion of the American Medical Association for Leave to Intervene" (doc. 45) and the parties' response to that motion; "Defendant's Motion for Reconsideration" (doc. 49); and "Motion to Stay by the United States Department of Health and Human Services" (doc. 52).  For the reasons stated, the court will GRANT the motion to intervene, will DENY the motion for reconsideration, will find as MOOT the motion for stay pending reconsideration, and will DENY the alternative motion for a stay pending appeal.

### Motion to Intervene

The American Medical Association filed the instant motion to intervene one day after this court entered an order on both parties' motions for summary judgment and twenty-three days after the hearing at which the court indicated its intended ruling.  The court held in part that the decision of *Florida Med. Ass'n v. Dep't of Health, Ed. & Welfare*, 479 F. Supp. 1291 (M.D. Fla.

1

1979) ("*FMA")* and accompanying injunction did not apply to the Medicare Part B outpatient

data withheld by Defendant HHS in this case.

      In its motion, the AMA requests the right to intervene under Fed. R. Civ. P. 24(a),

Intervention of Right, which provides as follows:

> On timely motion, the court must permit anyone to intervene who (1) is given
> an unconditional right to intervene by a federal statute; or (2) claims an
> interest relating to the property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a practical matter impair
> or impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Alternatively, the AMA requests that the court grant permissive intervention under Rule 24(b).

It claims a "direct and compelling interest" in this case because "the AMA and its members are

the beneficiaries of the permanent injunction in [the FMA case]"  and because "the disclosure of

the records that plaintiffs seeks would effectively reveal the financial information of physician

members of the AMA."  (doc. 45 at 2, 3).  The AMA claims that it first became aware of this

litigation on May 2, 2008, a week before it filed the motion to intervene. (doc. 45, at 5).

      The Eleventh Circuit Court of appeals, applying Rule 24(a), has held that intervention

> must be granted when four requirements are met:
> (1)    the application to intervene is timely;
> (2)    the applicant has an interest relating to the property or transaction that
>        is the subject of the action;
> (3)    the applicant is so situated that the disposition of the action, as a
>        practical matter, may impede or impair his ability to protect that
>        interest; and
> (4)    the applicant's interest will not be represented adequately by the
>        existing parties to the suit.

*Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007).  This test essentially restates the

language of Rule 24(a)(2). This court will apply each of these four requirements to the instant case.

*(1) Timeliness*

A discussion of timeliness necessitates a short chronology of the instant case. Plaintiffs filed the case on January 11, 2007 against HHS, requesting preliminary and permanent injunctive relief regarding its FOIA request. HHS acknowledged that it was withholding data from Plaintiffs, but argued in part that it was bound by the decision and accompanying injunction in *FMA*; HHS contends that the *FMA* injunction prohibits it from releasing the withheld data to Plaintiffs. This court denied the initial request for preliminary injunction. The parties subsequently filed cross-motions for summary judgment.

On April 16, 2008, the court held a hearing on those cross-motions for summary judgment and announced in open court its intention to grant partial summary judgment in favor of the Plaintiffs, finding that HHS improperly withheld certain 2002 Medicare Part B outpatient data. The court also announced in open court its finding that the *FMA* injunction does not apply to the withheld data in the instant case.

HHS notified the AMA of this lawsuit on May 2, 2008, shortly after the hearing. On May 5, 2008, the AMA orally notified the court that it would be filing a motion to intervene. On May 8, 2008, this court entered a Memorandum Opinion and Order on those cross-motions, granting in part and denying in part both parties' motions for summary judgment. Consistent with its findings at the hearing, it ruled that HHS had improperly withheld from Plaintiffs certain 2002 Medicare Part B outpatient data and that the *FMA* injunction did not apply to that data. It also entered a permanent injunction, directing HHS to make certain data available to Plaintiffs. On

3

May 9, 2008, one day after this court's Order on the cross-motions and almost sixteen months after the case was filed, the AMA filed the instant motion to intervene.

Because Rule 24 fails to define the term "timely" and the Advisory Notes to that rule provide no clarification, "the question whether an application for intervention is timely is largely committed to the discretion of the trial court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). "[T]imeliness is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Id.* (quoting *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977)). The Fifth[1] and Eleventh Circuits consider four factors governing timeliness of a motion to intervene.

The first factor is "[t]he length of time during which the would-be intervenor actually [knew] or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Stallworth*, 558 F.2d at 264. As noted from the chronology above, the AMA has stated that only one week elapsed from the date that HHS notified it of the suit and the date it filed the motion to intervene. The Plaintiffs express scepticism at the AMA's claim of ignorance about this suit until May of 2008. Plaintiffs argue that in light of the fact that the AMA and HHS have established a partnership to appeal a very similar case, *Consumers' Checkbook v. U.S. Dep't of Health & Human Svcs.*, 502 F. Supp. 2d 79 (D.D.C. 2007) (involving a similar district court's ruling on this Medicare disclosure issue and the same *FMA* injunction), HHS would have notified the AMA of the instant case much sooner.

---

[1]In *Bonner v. City of Prtichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

The court agrees that the *logical* and *prudent* approach would have been for HHS to notify the AMA soon after this suit was filed implicating the *FMA* injunction.  In that regard, the AMA "should have known" of this case much sooner than the notification date it asserts, after the court had made its oral ruling.  However, the court knows of no way the AMA would have received notice of this case except from HHS.  The court cannot condone HHS's tactic of waiting until it received an unfavorable ruling and *then* calling on the AMA to intervene; the intervention's timing appears to be HHS's attempt to obtain the proverbial "second bite at the apple."  Nevertheless, the court cannot hold the AMA responsible for this delay; under the circumstances,  it must accept the AMA's representation regarding when it received notice.  Accordingly, the court finds that the AMA has met the first factor.

The second factor in considering timeliness is "the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest in the case."  *Stallworth*, 558 F.2d at 265.  Accepting the AMA's date of notice, the court finds that Plaintiffs[2] and HHS have suffered little or no prejudice from the one-week delay by AMA.  The fact that the applicant filed its motion to intervene after a ruling on a dispositive motion does not automatically render the motion untimely.  *See United States v. Covington Tech.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (finding the government's motion to intervene to be timely even though that motion occurred after the district court had dismissed two defendants with prejudice and entered judgment against the

---

[2]The Plaintiffs assert that they are prejudiced by the further delay in receipt of documents due them under the court's May 8, 2008 order.  The court agrees.  However, that prejudice is the result of HHS's sixteen-month delay in notifying AMA of the Plaintiffs' case – not the one week delay between notification and the filing of the AMA's motion.

remaining defendant); *see generally* 7 C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1916 (noting that "the mere fact that judgment already has been entered should not by itself require a motion for intervention to be denied").

The third factor concerns the prejudice that the intervenor will suffer if its claim is denied.  In the instant case, the data to be released concerns medical services that AMA physicians performed.  In addition, the AMA members are the beneficiaries of the *FMA* injunction at issue.  The court does not agree that the *FMA* injunction applies to the data in question and does not necessarily accept the AMA's characterization of the data to be released or the extent that the data impacts the physicians' privacy interests.  Nevertheless, the court accepts the AMA's argument that it may suffer prejudice if the beneficiaries of the *FMA* injunction are not allowed to participate in the post-judgment motions and appeal of an order finding that the injunction does not apply.

The fourth factor concerns the existence of "unusual circumstance" that support intervention.  Although the court does not agree that the *FMA* injunction encompasses the data withheld in this case, it recognizes that HHS and the AMA have a colorable argument that the injunction does apply.  Because the data required to be withheld in the *FMA* injunction *and* the data required to be produced in the instant case involve AMA member physicians, this court finds that "unusual circumstances" exist pursuant to factor four.

In summary, the timeliness issue presented is a close one because the AMA "should have known" of this suit's existence much sooner than the actual notification date.  However, despite the fact that HHS's tardy plea to the AMA has prejudiced Plaintiffs, the court acknowledges that the intervening delay was the fault of HHS and not the AMA.  Accordingly, the court, in its

6

discretion, finds that the motion to intervene was timely within the meaning of Rule 24(a).

*(2) Appliant's Interest in the Property or Transaction*

Having reluctantly found the timeliness requirement to be met, the court addresses the second requirement for intervention as of right. "Under Rule 24(a)92), a party in entitled to [intervene] if the party's interest in the subject matter of the litigation is direct, substantial, and legally protectable." *Georgia v. U.S. Army Corps of Eng'rs*, 02 F.3d 1242, 1249 (11th Cir. 2002). As noted above, the data elements in this case relate to medical services provided by AMA member physicians and their practices. The court finds that the AMA's interest in the present litigation satisfies the relevant criteria for Rule 24(a)(2).

*(3) This Action's Potential to Impair Applicant's Ability to Protect Its Interest*

The third requirement for intervention of right is that the disposition of the action *may* impede or impair the applicant's ability to protect his interest. Although this court and the AMA disagree about whether the *FMA* injunction applies to this case, the court acknowledges that its May 8, 2008 order requires the release of data relating to AMA members and, further, that the AMA's ability to attack the order and protect its interests will be impaired if the court does not grant its motion to intervene. Accordingly, the court finds that the AMA has satisfied this requirement.

*(4) Adequate Representation*

The final requirement for an intervention of right is that the applicant's interest is not adequately represented by the existing parties to this suit. When an applicant and existing party seek the same outcome – as the HHS and the AMA do in the instant suit – the Eleventh Circuit presumes the party's representation is adequate. *See Clark v. Putnam County*, 168 F.3d 454, 461

(11th cir. 1999).  However, "the presumption is weak; in effect, it merely imposes upon the proposed intervenors the burden of coming forward with some evidence to the contrary." *Id.* Similarly, the United States Supreme Court has characterized the applicant's burden on this fourth requirement as "minimal."  *Trbovich v. United Mine Worker of America*, 404 U.S. 528, 538 n.10 (1972).  Therefore, the court will determine whether the AMA has overcome the "weak" presumption and met its "minimal" burden by presenting some evidence that HHS does not adequately represent its interests.

The AMA argues that the HHS and the AMA do not have identical interests.  The data involved not only in the instant case but also in the *FMA* injunction related to services provided by AMA physicians and their practices, and included information such as medical providers' names and addresses.  The AMA claims that the release of that kind of data – especially when combined with financial information – violates its members' privacy interests, and claims that because the HHS does not share the privacy interests of the physician groups at issue, it could not adequately protect them.  The AMA acknowledges that HHS may well have an institutional interest in clarifying or avoiding potentially conflicting injunctions and FOIA rulings and further, in avoiding the inconvenience of responding to FOIA requests.  However, HHS's privacy rights are not at stake and its interests do not coincide neatly with those of the AMA and its members.  To emphasize HHS's inability to adequately represent and protect the AMA's interests, the AMA notes that the HHS initially disclosed to Plaintiffs without a court order the type of records made the basis of the instant suit.  The AMA also points out several "new" arguments and procedural strategies – such as requesting a stay in this court while the AMA requests the Middle District of Florida to clarify the scope of the *FMA* injunction – that HHS did not proffer but that the AMA

8

would pursue if allowed to intervene.

This court acknowledges that the interests of the HHS and the AMA members are not identical.  However, HHS raised the privacy interests of the AMA members in its briefs and at the hearing, arguing that providing the requested information to Plaintiffs would violate those privacy interests and arguing that the *FMA* injunction covered the information requested in this case.  Thus, despite the AMA's protests to the contrary, HHS *did* present at least some of the same privacy arguments that the court would expect the AMA to raise in support of withholding the data at issue and the court doubts that the AMA will generate new and material arguments in that regard.  Yet, in light of the AMA's valid interest in the outcome, the court finds that the AMA has overcome the "weak" presumption that HHS adequately represented its interests, and the court will give the AMA a chance to represent itself.

Therefore, the court finds that the AMA meets the four requirements of Rule 24(a) and will GRANT the AMA's motion to intervene as of right.

Because of its ruling, the court need not consider the AMA's alternative motion for permissive intervention under Rule 24(b).  Nevertheless, even if, assuming *arguendo*, the AMA did not fully meet all requirements to intervene as of right, the court, in an exercise of its discretion, would grant permissive intervention because the court finds that the AMA has a "claim or defense that shares with the main action a common question of law or fact" as required by Fed. R. Civ. P. 24(b)(1)(B).  As noted previously, the privacy rights that HHS raises are those of the AMA members, and the AMA was a party to the *FMA* case and its members were the beneficiaries of the *FMA* injunction upon which HHS relies in defending this case.

Rule 24(b)(3) further requires the court to consider "whether the intervention will unduly

9

delay or prejudice the adjudication of the original parties' rights." Because the primary prejudice that Plaintiffs allegedly suffer corresponds to the delay caused by the proposed intervention, the court will focus on that element. The court recognizes that the intervention of the AMA has already caused some delay in the adjudication of the original parties' rights. The court had already ruled on the original parties' cross-motions for summary judgment before the AMA filed the motion to intervene and before HHS filed its motion for a stay in light of the motion to intervene; without the filing of those motions, this case was nearing conclusion. The filing of those motions stopped the progression of the case as the court considered whether to allow the AMA's intervention[3]. However, the court finds, in its discretion, that although allowing the AMA to intervene will cause and has caused some delay, that delay is not *undue.* As noted previously, the court has already ruled on cross-motions for summary judgment and, as established later in this opinion, it will deny HHS's motion for reconsideration. Although the AMA has hinted at the possibility of requesting a stay in this case pending a ruling by the Middle District of Florida on the scope of the *FMA* injunction, the AMA apparently has not yet filed any action in the Middle District of Florida requesting such a ruling, and this court will not base its own rulings upon speculation about cases not yet filed. Accordingly, the information presently before the court indicates that this case should conclude in the near future, and the AMA's intervention in the case should not *unduly* prejudice Plaintiffs or cause *undue* delay in the case's resolution before this court. Rather, it will afford the AMA an opportunity to participate in any post-judgment motions as well as any appeals process. Therefore, in the alternative, the court would grant the AMA's motion for permissive intervention under Rule 24(b).

---

[3] The court acknowledges that the delay was extended by the court's own heavy schedule.

**Motion for Reconsideration**

HHS has filed a motion, pursuant to Rule 59(3) asking the court  "to amend its May 8, 2008 order to the following extent: (1) that HHS is required to disclose the 2002 Medicare Part B outpatient data elements for Florida, Georgia, Mississippi, and Tennessee in dispute; and (2) that HHS is subjected to a permanent injunction."  (doc. 49).

"[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Reuter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 440 F. Supp. 2d 1256, 1266 (N.D. Ala. 2006).  Motions for reconsideration should not be a "'knee-jerk reaction to an adverse ruling.'" *Id.*  (quoting *Summit Medical Center of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)).  Neither should they be "a platform to relitigate arguments previously considered and rejected."  *Retuter*, 440 F. Supp. 2d at 1266.  Rather, they should be "only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."  *Summit Medical Center*, 294 F. Supp. 2d at 1266.

In the instant case, HHS does not present any new evidence that was unavailable at the time of the decision nor does it argue that controlling law changed after the date of the court's order.  Rather, HHS argues that the court should reconsider its previous rulings to correct clear error or avoid manifest injustice.  In support of its "manifest injustice" argument, HHS in effect presents an argument for allowing the AMA to intervene, stating that the AMA holds different interests than the HHS and that the court would be unjust not to allow the AMA to join this action as a party and have its "day in court."  Presumably, HHS also expects the court to reconsider its rulings in light of whatever new arguments the AMA might assert.  The court finds

11

HHS's position to be curious in light of its failure to notify the AMA of this litigation, despite their "partnership" on appeal in the *Consumers' Checkbook* case.  If HHS knew of the AMA's strong interest in this matter – such a strong interest that the court would be manifestly unjust not to allow it to intervene and present its arguments – then, why did HHS wait to notify the AMA of this lawsuit until sixteen months after the case's filing and after the court orally ruled adversely to HHS?  In any event, as noted previously, the court will grant the AMA's motion to intervene. The court will not, however, grant HHS's motion to reconsider based on its assumption that the AMA may, sometime in the future, present new and different arguments to the court regarding the cross-motions for summary judgment.

HHS also points to two "clearly erroneous" rulings in this court's May 8, 2008 order and accompanying opinion.  The first "error" involves this court's ruling that the *FMA* injunction does not apply to certain data withheld in the instant case.  Yet, HHS primarily presents the *same* arguments that the court heard before its ruling and found unpersuasive.  HHS does, for the first time, argue that this court should "stay its hand pending a definitive interpretation by the Middle District of Florida as to the applicability of the 1979 order."  (Def.'s Br. 11).  However, HHS does not advise the court that it has taken action in the Middle District of Florida to address the scope of the *FMA* injunction.  Accordingly, the court is unclear whether HHS is demanding this court to wait – perhaps indefinitely – until it seeks a ruling from the Middle District or whether HHS is demanding that this court request a ruling from the Middle District of Florida to that effect.  This court will not accede to either demand.

HHS relies heavily on the decision of *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980).  The *GTE Sylvania* opinion stated that governmental agencies

"subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."   *Id.* at 386.   Accordingly, the court held that an agency withholding documents subject to such an injunction is not "improperly" withholding data within the meaning of FOIA and is not required to commit contempt of court to release documents under FOIA.  *Id.* at 387.   HHS also argues that considerations of comity require this court to give broad deference to the *FMA* injunction of the United States District Court for the Middle District of Florida, and that this court's ruling on the cross-motions for summary judgments interferes with and fails to defer to the *FMA* injunction.

HHS's argument misconstrues this court's ruling on the cross-motions for summary judgment.  As noted previously, the court has recognized the existence of the *FMA* injunction.  If this court had found that the *FMA* injunction applied to the instant case, then it would defer to that order.  However, after careful consideration and analysis, this court found that the *FMA* injunction does not apply to the instant case; consequently, it does not agree that a conflict exists between the *FMA* injunction and its own rulings.  Without a conflict, the established principles of comity and deference to orders of sister federal courts do not arise and require this court to stay its hand.  In any event, this court finds no clear error in its decision that the *FMA* injunction does not apply to the data withheld in the instant case.

The second "error" that HHS identifies is the court's finding that, having engaged in FOIA's Exemption 6 balancing test, the public interests outweighed the privacy interests and required disclosure of the data in question.  The court reiterates that the onerous burden rested on HHS to prove that disclosure "would constitute a clearly unwarranted invasion of personal

privacy." *See* 5 U.S.C. § 552(b)(6); *New-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1198 (11th Cir. 2007). Further, Exemption 6's "clearly unwarranted" language weighs the balancing scales "in favor of disclosure." "Under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). Yet, HHS insists that it met its onerous burden and overcame the strong presumption in favor of disclosure. The court disagreed in April and still disagrees today.

HHS claims that this court committed error by focusing on the "providers who receive Medicare reimbursement rather than on the operations and activities of the agency itself." (doc. 50, p. 13). The court, however, did focus properly on the public's interest in what its "government is up to" (*see U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 773-74 (1989); providing information for the public to determine how efficiently the government is spending its Medicare dollars undoubtedly serves the core purpose of FOIA. HHS insists that providing information to evaluate doctors who receive Medicare payments does not serve the core purposes of FOIA, because HHS has no authority "to pay doctors with high success rates more under Medicare." (Def.'s Br. On Motion for Reconsideration 23). The Plaintiffs have never argued that HHS should pay doctors at different rates, so HHS's argument misses the point. The court remains convinced that a nexus exists between the public's interest in evaluating doctors who receive Medicare payments and the public's interest in evaluating the government's efficient use of Medicare dollars.

HHS argues at length that individuals have a privacy interest in the nondisclosure of names and addresses paired with financial information. This court does not disagree; it simply

14

found that the privacy interest in the *raw data* at issue in the instant case – data that had not been converted into reimbursement totals for each provider – is limited.   The court weighed the privacy interests against the public interests in disclosure and found that the balance tipped in favor of disclosure.  Upon reconsideration, the court finds that its previous ruling is not "clear error."  HHS did not meet its onerous burden of proving that the data at issue constituted a "clearly unwarranted invasion of personal privacy" within the meaning of Exemption 6.  The court stands by its interpretation that the law as applied to the facts of this case supports the strong presumption of disclosure.

Accordingly, the court finds that its Order of May 8, 2008, requiring HHS to disclose certain data to Plaintiffs, was not clear error and does not cause manifest injustice.  Because HHS has provided no further grounds in support of its motion for reconsideration, the court will DENY HHS's Motion for Reconsideration.

## <u>Motion for Stay Pending Reconsideration</u>

In conjunction with its Motion for Reconsideration, HHS also requests that the court enter a stay until the court reconsidered its ruling.  The court did not previously grant the stay and, in light of its ruling on the motion for reconsideration, the court finds the motion to stay is MOOT.

In the alternative, HHS requests a stay of the disclosure order and of the permanent injunction pending appeal.  The court will DENY this request.  The court notes that its rulings are not yet final; its May 8, 2008 Order only granted partial summary judgment and issues remain in this case.  HHS has not requested that the court certify its ruling as "final" for purposes of an interlocutory appeal under FRCP 54(b), so no appeal is imminent.

## Conclusion

In summary, the court will GRANT the AMA's Motion to Intervene as of right (doc. 45);

DENY HHS's Motion for Reconsideration (doc. 49); FIND AS MOOT  HHS's Motion for a

Stay Pending Reconsideration (doc. 52); and DENY HHS's alternative Motion for a Stay

Pending Appeal.

Dated this 19th day of November, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE