FILED
2010 Sep-30  PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | | |
|---|---|---|
| **JENNIFER D. ALLEY and REAL TIME MEDICAL DATA, LLC** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-07-BE-0096-E** |
| | ] | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |
| | ] | |
| | ] | |
| | ] | |

## MEMORANDUM OPINION

This Freedom of Information Act matter is before the court on Plaintiffs' second "Motion for Summary Judgment" (Doc. 94); "Defendant's Cross-Motion for Summary Judgment" (Doc. 112); and Plaintiffs' "Motion to Strike" (Doc. 117)[1].  The cross-motions for summary judgment address whether Defendant HHS has instituted internal policies that violate FOIA and the EFOIA Amendments; whether those policies resulted in the wrongful denial of Plaintiffs' FOIA requests; and whether, despite the eventual release of the data requested, the policies represent a continuing threat to Plaintiffs' right to obtain documents under FOIA as amended.  The court had previously denied cross-motions for summary judgment on this matter but allowed post-summary

---

[1]Two other motions are currently under submission in this case: "Plaintiff's Motion for Summary Judgment upon Remand" (Doc. 122); and "Defendant's Cross-Motion for Summary Judgment upon Remand" (Doc. 126).  However, because these motions focus on different issues, the court will address them separately.

judgment discovery on it.

For the reasons stated in this Memorandum Opinion, the court finds that the Plaintiffs' second motion for summary judgment is due to be DENIED; Defendant's cross motion is due to be GRANTED; and Plaintiffs' motion to STRIKE is due to be DENIED.

## I.  PROCEDURAL HISTORY

The parties previously filed cross-motions for summary judgment addressing Plaintiffs' 2003 request for 2002 Medicare Part B Outpatient Data in Florida, Georgia, Mississippi, and Tennessee ("2003 Multistate Request").  Although HHS had initially denied Plaintiffs' request, it then reversed its decision and *released* the data requested, with some specific exceptions.[2]  HHS argued that this release rendered moot any claims based on the initial denial.  However, Plaintiffs argued that the initial denial letter in June 2003 referred to an internal "policy or practice" that violates FOIA, and thus, their challenge to the *policy* remained viable even after the release of the information.  The court denied HHS's motion for summary judgment and, further, denied in part and granted in part Plaintiffs' motion.   After an appeal focused on the data *withheld* on the 2003 Multistate Request, the Eleventh Circuit reversed and remanded the case and vacated this court's judgment as to the data withheld.

As to the issue addressed in the current motions, the court had denied both parties' first round of motions for summary judgment, finding a genuine issue of material fact, at least based on the Record that existed at the time.  The court granted Plaintiffs leave to conduct limited

---

[2] HHS appealed the court's rulings on the claims involving the excepted data that the agency *withheld* data for the 2002 Medicare Part B outpatient requests for Florida, Georgia, Mississippi, and Tennessee.  The Eleventh Circuit reversed and remanded on issues not relevant to the present discussion. (Doc. 120).

discovery – if they chose to pursue it –on the following specific issue: whether Defendant initially denied Plaintiffs' 2003 Multistate Request because it had/has an agency policy in place violating FOIA, and if so, whether that policy represents a continuing injury that threatens to prevent Plaintiffs' access to information in the future.  The Order listed two specific internal policies that Plaintiffs had raised as violating FOIA and resulting in the initial denial of their Medicare Part B requests: the policies of denying any claim that requires more than two hours of response time and of misapplying the "creation of a new record" excuse to a computer programming situation.  This issue only applies to data that HHS later produced – *not* the data it withheld and that was subject to the appeal.  Plaintiffs chose to pursue limited discovery on that issue regarding internal policies, and subsequently, the parties filed these cross-motions.

## II.  MOTION TO STRIKE

Prior to addressing the cross-motions, the court must resolve the issues raised in Plaintiffs' Motion to Strike (Doc. 117).  That motion requests that the court strike (1) Section I of HHS's Opposition (Doc. 111) because it does not comply with Appendix II requirements; and (2) the Declaration of Michael Marquis (Doc. 113-1), because it contradicts his prior and inconsistent deposition testimony and is submitted for the purpose of opposing a motion for summary judgment.  Mr. Marquis is the Director of the Freedom of Information Group (FIG), Office of Strategic Operations and Regulatory Affairs, Centers for Medicare & Medicaid Services (CMS), U.S. Department of Health and Human Services (HHS).  As to the first basis for the motion, the court finds that Section I of HHS's opposition brief substantially complies with Appendix II requirements to the extent that Section I responds to Plaintiff's statement of undisputed facts.  Thus, the court will DENY the motion to the extent that it relates to striking

Section I as an inadequate *response* to undisputed facts.

The court notes, however, that to the extent that HHS raises *additional* undisputed facts of its own, whether in opposition to Plaintiffs' motion or in support of its own cross-motion, HHS should have set those facts out in separately numbered paragraphs identified as additional undisputed facts as required by the court rule contained in Appendix II, and it did not do so. HHS did, however, number the paragraphs of Michael Maquis's declaration, which sets out those additional facts.   Plaintiffs had the opportunity to respond and did indeed respond to that declaration, as evidenced by the Motion to Strike, which provides deposition pages in opposition. Acknowledging that response and, therefore, desiring not to delay the case any further by requiring a "do-over," the court will not strike HHS's opposition on that basis.   Thus, the court DENIES the motion's request to strike Section I of HHS's brief.

To resolve the second request, the court must examine Mr. Marquis's testimony in his deposition and his affidavit.  Generally, a party cannot avoid summary judgment by filing a "sham" affidavit or declaration. *Van T. Junkins & Assoc. v. U.S. Inds.,* 736 F.2d 656, 657 (11th Cir. 1984).   The Eleventh Circuit has explained that "an affidavit may only be disregarded as a sham when a party has given clear answers  to unambiguous questions which negate the existence of any genuine issue of fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (quoting *Van T. Junkins.,* 736 F.2d at 657).   However, a court should apply this sham affidavit rule "sparingly" because of its "harsh effect";  a practice of striking testimony every time a witness includes any variation in his story or fails to state or remember a detail "'would require far too much from lay

witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words [he] was stating the truth.'" *Rollins v. TechSouth,* Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) (quoting *Tippens*, 805 F.2d at 953-54). Therefore, the court will not automatically strike a declaration because it varies from statements in the declarant's prior deposition.  Rather, the court would consider the declaration if it merely supplements or amplifies earlier testimony or clarifies ambiguous testimony.  *See Tippens*, 805 F.2d at 953-54. Similarly, the court would properly refuse to strike a declaration if it provides a plausible explanation of confusion during earlier testimony and if the two testimonies are not "inherently inconsistent." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (11th Cir. 1980) (reversing district court's grant of summary judgment and finding that the district court was wrong in disregarding plaintiff's affidavit; the affidavit provided a plausible explanation of parts of plaintiff's deposition testimony and created a genuine issue of material fact).

In the instant case, Plaintiffs argue that Mr. Marquis's affidavit is a sham because it contradicts his responses to direct, clear questions on a number of subjects.  They do not quote the conflicting statements in the five-page declaration or in the deposition, nor do their citations to twenty-nine pages of the deposition give specific line cites.  Such specificity would have avoided the court's head-scratching over exactly what statements were conflicting and, incidentally, would have made the job easier.  However, the court notes that HHS bears at least partial blame for this problem, because it did not list the facts in the declaration as additional undisputed facts.

In any event, the court has reviewed the declaration and all twenty-nine pages of cited deposition testimony and finds that the declaration does *not* fall within the category of testimony

that the court should disregard as a sham designed to defeat summary judgment.  Mr. Marquis's

declaration does not "merely contradict[], without explanation, previously given clear

testimony."  *Van T. Junkins.,* 736 F.2d at 657.  Far from being "inherently inconsistent" with his

deposition testimony, the court finds that the Mr. Marquis's declaration supplements, clarifies,

and explains his previous testimony.  Thus, the court will DENY the entire request to strike the

declaration, and will consider the statements in it during the summary judgment process.

### III.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.  SCOPE

Plaintiffs and HHS have filed cross-motions for summary judgment on the issue of

whether HHS[3] initially denied Plaintiffs' 2003 Multistate Request because it had/has an agency

policy in place violating FOIA and the policy threatened to prevent Plaintiffs' access to

information in the future.  Because the discovery upon which these cross-motions are based

occurred after the initial round of summary judgment motions and in response to the court's

Order, and because the parties disagree on the appropriate scope of these motions, the court will

review its May 8, 2008 Memorandum Opinion (Doc. 43) and Order (Doc. 44).

The court's May 8, 2008 Memorandum Opinion addressed the mootness of the claim

regarding *released* data in response to Plaintiffs' 2003 Multistate Request.  In that opinion, the

court stated:

> Plaintiffs admit that – after they filed this FOIA suit and almost four years
> after the initial request – they have finally received the 2002 records minus

---

[3] For simplicity's sake, the court refers to government actions as those of HHS.  The person who denied the claim was Lee Jackson, Director of Freedom of Information Group for the Health Care Financing Administration (HCFA).  In 2001, all references to the HCFA were changed to the Centers for Medicare & Medicaid Services (CMS).  66 Fed. Reg. 35437.

the specified data exceptions.   This reversal of position would ordinarily moot any claims for the data released.  *See Brown v. U.S. Dep't of Justice*, 169 F. App'x 537, 540 (11th Cir. 2006) (*per curiam*) (citing *Lovell v. Alderete*, 630 F.2d 428, 430-31 (5th Cir. 1980) (holding that the FOIA issue was moot when plaintiff received documents sought, even though the agency delivered them late)).  "A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution."  *Payne Enter. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988).  If, however, Plaintiffs are able to demonstrate that HHS operates under an internal "policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA," then the mootness doctrine would not invalidate their claim; they could assert that the agency policy represents a "continuing injury" that will prevent their access to information in the future.  *See id.*

***

Despite Plaintiffs' assertions that HHS has a policy of unreasonably denying FOIA requests that take over two hours to process and/or that require it to create computer programming, the government essentially ignores those assertions, insisting only that any claim related to the released data is moot.  Although Plaintiffs' allegations may ultimately prove to be unfounded, the court cannot  – on the record before it – conclude that HHS does not have a policy that violates the FOIA.  Plaintiffs are entitled to conduct discovery to flesh out this claim. Therefore, the court finds that although the request for the data provided is moot, the challenge to the policy under which that data was originally withheld is not.   However, a genuine issue of material fact remains regarding this claim and the court will DENY both parties' motions for summary judgment on this claim at this point and will grant Plaintiffs leave to conduct limited discovery on this issue should they wish to pursue it.

(Doc. 43, at 10-12).  The court's Order stated:

> Request for 2002 Medicare Part B Outpatient Data in Florida, Georgia,
> Mississippi, and Tennessee:
>
> Regarding the data elements *already released* under this request,
> the court DENIES BOTH parties' motions for summary judgment on
> this claim.  However, the court GRANTS Plaintiffs leave to conduct
> limited discovery on the following issue:  whether Defendant initially
> denied that request because it had/has an agency policy in place violating
> FOIA – of denying any claim that requires more than two hours of
> response time or of misapplying the "creation of a new record" excuse to
> a computer programming situation – and whether that policy represents a

7

continuing injury, threatening to prevent Plaintiffs' access to information
in the future.

(Doc. 44, at 1-2).

After the entry of the court's May 8, 2008 Order and during the pendency of the appeal on different issues, the parties conducted discovery and filed another round of cross-motions for summary judgment.  Plaintiffs' motion also contains corresponding requests for injunctive and declaratory relief.  HHS argues that these requests for equitable relief, as well as some of the issues raised in the motions, exceed the scope of this court's jurisdiction and the scope of its May 8, 2008 Order.  In light of that argument, the court will first determine whether any issues or requests raised do indeed fall outside the proper scope of these proceedings.

1.  Medicare Part A Data

By the time that the parties filed their Amended Complaint (Doc. 43) and the first round of summary judgment motions, HHS had already agreed, in response to the 2003 Multistate Request, to release all of the requested Medicare Part A *outpatient* data in full and all of the Part A *inpatient* data with the exception of patient control numbers.  In the Amended Complaint, Plaintiffs stated that they "specifically contest[] Defendant's refusal to disclose agency records related to the *Part B outpatient data*. . . ." (Doc. 43, ¶ 16) (emphasis added).  In its original motion for summary judgment and accompanying brief (Docs. 30 & 31),  HHS focused *only* on Medicare Part B data and did not acknowledge that any Part A data was still the subject of dispute.  Plaintiffs' original cross-motion for summary judgment (Doc. 36), filed more than two weeks later, did not object to HHS's undisputed facts and did not alert the court that Plaintiffs continued to have issues with the response to the Medicare Part A request.   At the hearing on the motions,

the parties did not mention the Medicare Part A data, and discussions at the status conferences focused solely on Medicare Part B data.  Accordingly, in its Memorandum Opinion addressing the first round of summary judgment motions, the court considered only the withholding of Medicare Part B data to be at issue, and specifically noted that "[a]lthough the HHS had also withheld patient control numbers from Part A inpatient data, Plaintiffs' amended complaint does not contest that nondisclosure." (Doc. 43, at 9 n.5).  The May 8, 2008 Order and Permanent Injunction entered contemporaneously addressed only Medicare Part B data. Specifically, the Order allowing additional discovery did so under the specific heading referring to "2002 Medicare Part B Outpatient Data."

Therefore, the court agrees with HHS that Plaintiffs' arguments and requests for equitable relief regarding Medicare Part A data are beyond the scope of the claims in the Amended Complaint and beyond the "limited" scope of discovery allowed by the May 8, 2008 Order.  That Order purported to resolve all issues in the Complaint as amended *except* the ones listed in the Order as still open and subject to further but limited discovery.  Those excepted matters listed in the Order did not involve Medicare Part A data, and Plaintiffs may not raise new issues belatedly.

2.  Objections to CMS's Use of Contractors to Assist in Processing and of  Sample Cover Letter

In their second motion for summary judgment, Plaintiffs also object to CMS's use of private contractors in processing FOIA claims and the use of an allegedly inadequate sample cover letter in the denial of FOIA claims.  The Complaint as amended does not raise these objections nor did the original set of motions for summary judgment.  In allowing limited discovery after the summary judgment process, the court was *not* opening Pandora's box, inviting

Plaintiffs to discover and object to new evils not previously raised.  The court's May 8, 2008

Order meant what it said: it was allowing *limited* discovery to further flesh out specific issues

already raised.  Those specific issues surround whether Defendant initially denied the 2003

Multistate Request because it had/has an agency policy in place violating FOIA, and if so, whether

that policy represents a continuing injury, threatening to prevent Plaintiffs' access to information

in the future.  The May 8, 2008 Order listed two specific policies that Plaintiffs had raised as

violating FOIA and resulting in the denial of their Medicare Part B request: (1) the policy of

denying any claim that requires more than two hours of response time; and (2) the policy of

misapplying the "creation of a new record" excuse to a computer programming situation.  (Doc.

44, at 1-2).  Objections regarding the use of private contractors and the sample cover letter do not

fall within those policies.  Objections to additional policies allegedly violating FOIA cannot be

raised at this belated juncture and are beyond the scope of matters that this court will consider.

Moreover, Plaintiffs have not alleged that the flawed cover letter adversely affected them

in pursuing the FOIA request at issue.  Most fundamentally, they have not established that they

even received a cover letter modeled after the objectionable sample Cover Letter.  The denial

letter for the request that forms the basis of the limited discovery was certainly not modeled after

it.  Plaintiffs' objections to the sample cover letter center around the letter's failure to provide a

number to call with questions, or to disclose that a requester had the right to an informal review

and that the request might be filled with payment of a fee or with production of data in a different

form.  However, Plaintiffs acknowledge that after receiving the denial of her request, Ms. Alley

was able to contact the person who denied her requests, discuss more fully why her claim was

denied, and proceed with filing an administrative appeal.  Thus, the flaws that Plaintiffs raise

about the model letter – however they may threaten a hypothetical, less experienced FOIA

requester – did not apply to Plaintiffs and did not obstruct the FOIA process for their requests.

The court reiterates that when it allowed post-summary judgment discovery, its Order was tailored

to specific policies impacting specific Plaintiffs and a specific FOIA request.  The court did not

invite Plaintiffs to search out and bring to the court all flawed FOIA policies of HHS  and convert

this court into a super-watchdog over HHS's FOIA practices.  The role of this court is to

adjudicate cases in controversy, not to issue advisory opinions about whether policies violate

FOIA where no evidence exists that the policies impacted the particular Plaintiffs at bar.    Thus,

the court rejects these newly-raised objections and will proceed to address the two policies

referred to in its May 8, 2008 Order.

### B.  LEGAL STANDARD

"Generally, FOIA cases should be handled on motions for summary judgment, once the

documents at issue are properly identified."  *Miccosukee Tribe of Indians of Fla. v. United States*,

516 F.3d 1235, 1243 (11th Cir. 2008).  "Summary judgment is appropriate if the pleadings,

depositions, admissions on file, together with the affidavits, show that there is no genuine issue of

material fact and that the moving party is entitled to a judgment as a matter of law."  *Id.* (quoting

Fed. R. Civ. P. 56 (c)).  "A factual dispute between the parties will not defeat summary judgment

unless it is both genuine and material."  *Id.*  The court must view "all facts and reasonable

inferences in the light most favorable to the non-moving party."  *Id.*

The FOIA, codified at 5 U.S.C. § 552, was enacted for the purpose of  "encourag[ing]

public disclosure of information so citizens may understand what their government is doing."

*Miccosukee*, 516 F.3d at 1244 (quoting *Office of the Capital Collateral Counsel, N. Region of Fla.*

*v. U.S. Dep't of Justice,*, 331 F.3d 799, 802 (11th Cir. 2003)).  To further that purpose, the FOIA

"gives federal district courts the jurisdiction 'to enjoin [an] agency from withholding agency

records and to order the production of any agency records improperly withheld.'" *GTE Sylvania,*

*Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384 (1980) (quoting 5 U.S.C. §

552(a)(4)(B)).

The district court conducts a *de novo* review of the agency's determination that it has

properly fulfilled its obligations under the FOIA.  5 U.S.C. § 552(a)(4)(B).  The agency bears the

burden of demonstrating that it has acted properly in withholding information based upon an

exemption.  *Miccosukee*, 516 F.3d at 1258.

### C.  TWO-HOUR RULE

#### 1.  Background

Lee Jackson of CMS initially denied Plaintiffs' 2003 Multistate Request because "the

extraction, compilation and production of the requested data would involve a significant amount

of programming time, specifically in the creation of computer programs to extract and compile the

requested data. . .[and that] none of the estimates [for obtaining that data] fell within our

customary two-hour threshold. . . ."  In other words, the request was blocked by the purported

two-hour rule.

The two-hour rule was based on a four-page internal memorandum dated April 24, 1997

("Internal Memo") that the Acting FOIA Director for the predecessor agency of CMS issued to

agency and contractor FOIA staff regarding the implementation of "EFOIA" Amendments.  The

"EFOIA" Amendments, the Electronic Freedom of Information Act Amendments of 1996,

require that an agency provide a record in any form or format requested if the record was readily

reproducible in that form or format, regardless of whether the agency already kept the data in that

form or intended to keep it in that form after fulfilling the FOIA request.  5 U.S.C. § 552(a)(3).

Further, each federal agency is required to "make reasonable efforts to search for the records in

electronic form or format, except when such efforts would significantly interfere with the

operation of the agency's automated information system."  5 U.S.C. § 552(a)(3)(B).

The April 1997 Internal Memo stated that where the agency maintains a record in one

format – whether hard copy, floppy disks, tapes, or CDs, etc. –  and the requester wants the

record to be disclosed in a new format, the agency "will consider a record to be 'readily

reproducible' to a new format if not more than a combined total of 'two hours' of agency

resources are expended to make the conversion." (Doc. 113-2, at 2-3).  The Internal Memo

further stated that where the requester wants the information to be produced in a different

organization or arrangement, the agency would now:

- produce the record in the format the requester wants if programming
  already exists to generate the record in that format and not more than
  "two hours" of computer resource time will be expended to make the
  conversion.
- produce the record in the format the requester wants if minimal
  computer instructions are necessary to produce the record and not
  more than "two hours" of computer resource time will be expended to
  make the conversion.
- produce the record in the format the requester wants if less than two
  hours programming (i.e., writing program design, coding and testing
  specifications) are required to generate the record and such production
  will not consume more than two hours of the searching unit's
  computer operations systems resources.

(Doc. 113-2, at 3).  After the third bullet point above, a footnote stated: "The attachment to this

memorandum contains the text of a letter that should be used to respond to a FOIA request when

the agency determines that generation of the record from a computer database will involve more

than two hours of computer development time." (Doc. 113-2, at 3).

Plaintiffs filed this lawsuit claiming that the two-hour rule violated the FOIA and EFOIA

Amendments, and on May 14, 2007, CMS's director of Freedom Information Group reversed the

initial denial of the 2003 Multistate Request.  Although HHS argued that this reversal rendered

moot any further litigation about the released data, Plaintiffs disagreed.  They argued on the

initial round of summary judgment motions that even though HHS eventually provided the data

requested, the wrongful two-hour rule was still in effect, threatened to obstruct future FOIA

requests, and thus, was not a moot issue.  On May 8, 2008, the court entered the Order discussed

above at III.A., denying both cross-motions for summary judgment as to the released data and

granting Plaintiffs leave to conduct limited discovery on two issues, including the two-hour rule.

On March 5, 2009, just weeks before his scheduled Rule 30(b)(6) deposition in this case,

Marquis issued an agency-wide Memorandum to its fields offices specifically rescinding the two-

hour rule:

> Effective immediately, the Centers for Medicare & Medicaid Services
> (CMS) and its contractors <u>shall no longer apply</u> the guidance contained in
> the April 24, 2997 memorandum . . . as such pertains to the formatting of
> records under the Freedom of Information Act (FOIA).  This guidance states
> that in response to FOIA requests for computerized records, CMS will <u>not</u>
> produce the record in the format the requester wants if more than two hours
> of computer development time (i.e., programming and computer generation
> time) is required to produce the record.  The CMS can no longer apply this
> "2 hour" rule because it has been invalidated by FOIA case law and
> Department of Justice FOIA guidance that post date it.

(Doc. 113-4, at 2).  Marquis admits that this lawsuit caused him to take notice of the "two-hour"

rule; to research FOIA law to determine its validity; to discuss the validity of the rule with other

CMS FOIA officers; and ultimately, to order that the Rescission Memorandum to be written and

issued.   Marquis's affidavit states that "CMS no longer applies any rule which restricts the processing or production of FOIA requests to two hours."  (Doc. 113-1, ¶ 7 at 5).  It also states that since May 2007, "[n]one of [Plaintiffs'] FOIA requests for Alabama, Florida, Georgia, Mississippi or Tennessee data have [sic] been denied on the basis that the request requires CMS to create a new record or exceeds a two hour limit."  (Doc. 113-1, ¶ 6 at 4).

    2. Discussion

    HHS argues that the rescinding of the two-hour rule renders moot the issue of whether the two-hour rule violated FOIA.  Plaintiffs argue that the Internal Memo set up three separate two-hour rules (one dealing with time *formatting* records, one dealing with *searching* for the records, and one dealing with *generating* those records) and that the Rescission Memo only rescinded the two-hour rule dealing with record formatting; thus, the argument goes, the other two-hour rules are still in effect.

    The evidence provided indicates that no genuine issue of material fact exists as to whether any two-hour rule remains in effect: the rule is dead.  Despite Plaintiffs' arguments to the contrary, an examination of the Internal Memo shows that it set up a two-hour rule with several sub-parts, and that the Rescission Memo rescinded the two-hour rule in its entirety.  The Rescission Memo referred to the two-hour rule in the April 24, 1997 Internal Memo as one rule and did not single out any of the sub-parts for special treatment.  Further, the Rescission Memo referred to formatting time in the first sentence, but also referred to computer development time, computer programming time and computer generation time in the second.  Mr. Marquis's clear, expressed intention was to rescind the entire two-hour rule as expressed in the April 1997 Internal Memo.  Mr. Marquis's declaration states that after the Rescission Memo, the agency has not denied any of Plaintiffs'

FOIA claims based on the two-hour rule, and indeed, has not denied *any* claims based on the two-hour rule.  Plaintiffs have provided no evidence to the contrary.  Therefore, the court finds that the evidence shows that the two-hour rule is rescinded and is no longer being applied to deny claims.  In light of that finding, the courts further finds as MOOT the claims that challenge the two-hour rule and are based on *released data* pursuant to the 2003 Multistate Request.

### D. "REASONABLE EFFORTS" RULE

To the extent Plaintiffs argue that the April 24, 1997 Internal Memo also created a "reasonable efforts" rule that violated FOIA, and applied that rule to initially deny Plaintiffs' 2003 Multistate Request, and further, that the "reasonable efforts" rule is still in effect, the court rejects the argument.  The term "reasonable efforts" in the April 24, 1997 Internal Memo was a reference to the words used in the EFOIA Amendments but not defined in those Amendments; it was not a separate rule that HHS created.  When responding to Plaintiffs' 2003 Multistate Request, the agency relied on the Internal Memo that attempted to define the "reasonable efforts" term through the use of the two-hour rule.  Thus, any relevant discussion of the term and the agency's application of it would be subsumed under the two-hour rule discussion above.  In any event, assuming *arguendo* that the agency created a "reasonable efforts" rule apart from the two-hour rule, Plaintiffs did not raise any argument about the "reasonable efforts" rule during the first round of motions for summary judgment, and it is beyond the scope of permitted post-summary judgment discovery and subjects permitted to be raised in the second round of summary judgment motions.

### E.  CREATION OF A NEW RECORD

### 1.  Background

In initially denying Plaintiffs' 2003 Multistate Request, Mr. Jackson provided two reasons

16

for the decision: (1) the two-hour rule, which the court has already discussed; and alternatively, (2) the "creation of a new record" exception to FOIA, excusing nondisclosure of requested documents when the request would require the agency to create a new record.  Plaintiffs subsequently filed this lawsuit.  On May 14, 2007, after this suit was filed, Mr. Marquis reversed this finding and released data in response to the 2003 Multistate Request.  As noted previously, although some data continued to be withheld in response to that request, the instant motions concern only the released data.  Plaintiffs argue that even though the agency had released the data, the policy of misapplying the "creation of a new record" excuse remained and threatened to affect Plaintiffs' ability to obtain records under the FOIA.

2.  Discussion

Mr. Jackson's alternative reason for denying the claim was wrong.  Creating "programming necessary to instruct the computer to conduct a search does *not* involve the creation of a record" within the meaning of FOIA.  *Schladetsch v. U.S. Dep't of Hous. & Urban Dev.,* 2000 WL 33372125, at *2-3 (D. D.C. 2000) (emphasis added); *see Kensington Research & Recovery v. U.S. Dep't of Hous, & Urban Dev.,* 620 F. Supp. 2d 908, 910 (N.D. Ill. 2009) (citing *Schladestsch's* holding that "extracting and compiling the data does not amount to the creation of a new record").  Given HHS's acknowledgment that this alternative reason was a misapplication of the "creation of a new record" excuse and the agency's *release of data* pursuant to a reversal of its original decision denying the request, this issue would ordinarily be moot.

Again, Plaintiffs argued on the first round of motions for summary judgment, however, that this error was not an isolated one but was based upon a policy of misapplying the "creation of a new record" excuse.  Despite this argument, Plaintiffs have pointed this court to no evidence

supporting their argument.  Rather, as both Plaintiffs and HHS acknowledge, the agency's own

Internal Memo makes clear that the computer programming requested would not constitute the

"creation of a new record" under FOIA.  *See* Pl.'s Br. in Supp. 2nd Mot. SJ, Doc. 95, at 40-41 n. 8

(stating "even the Internal Memo itself conceded that the search and compilation of electronic data

from one form to another could not constitute the 'creation of a new record' under EFOIA, and that

a FOIA request could not therefore be denied on that ground going forward"); Def.'s Br.  re 2nd

Mot. SJ, Doc. 111, at 28 (stating that "Mr. Jackson's finding was contrary to the 1997 [Internal]

Memorandum's guidance regarding EFOIA amendment ..., clearly stat[ing] that the search and

retrieval of computerized records would <u>not</u> amount to the creation of records").  Thus, this

evidence reflects that the agency has a policy in place that – at least on its face – does not misapply

the "creation of the record" excuse.  Mr. Jackson's decision was contrary to the policy set forth in

the Internal Memo.  Without any contrary evidence, then, the record points to *one* misapplication

of the "creation of a new record" excuse rather than a policy of misapplication.

Plaintiffs relegate this issue to a footnote.  They provide no evidence – such as additional

misapplications of this excuse to Plaintiffs' other requests or third parties' requests – to support

their argument that this error was not an isolated one.  Stating that "there is absolutely no evidence

that HHS has in any way halted this method of wrongful FOIA denials," Plaintiffs miss the point.

Pls.' Br. Doc. 95, at 42-43 n.8.  Given the release of the data in question, the whole point of the

post-summary judgment discovery was to determine whether any evidence existed that Mr.

Jackson's misapplication of the "creation of a record" excuse was not an isolated error, but rather,

was an on-going policy of misapplication that continues to injure Plaintiffs.  HHS does not have to

prove a negative. Because Plaintiffs were unable to come up with evidence to support their

argument about the policy of misapplication, then the release of the data in question resolved the error, and they have no continuing injury.  As no genuine issue of material fact exists on this issue, the court finds their claim to be MOOT.

In sum, Plaintiffs have provided no evidence that the agency has a policy that remains in effect involving the two-hour rule or the misapplication of the "creation of a record" excuse that would represent a continuing injury or threat to Plaintiffs' requests for data under the FOIA.  Thus, their claims regarding the *released* data under the 2003 Multistate Request are MOOT.  Plaintiffs' second motion for summary judgment on this matter is due to be DENIED, and Defendant's cross motion for summary judgment on this matter is due to be GRANTED.

## IV.  CONCLUSION

For the reasons stated in this Memorandum Opinion, the court finds that Plaintiffs' motion to strike is due to be DENIED; Plaintiffs' second motion for summary judgment is due to be DENIED; and Defendant's cross motion for summary judgment on the internal policies matter is due to be GRANTED.  The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 30th day of September, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE